**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SUAREZ CORPORATION INDUSTRIES;
EMERSON SONNY CLOPPER; PATRICIA
CLOPPER; ELIZABETH PISHNER,
Plaintiffs-Appellees,

v.

No. 95-3093

DARRELL V. MCGRAW, JR., Attorney
General of the State of West
Virginia, in his official capacity;
THOMAS RODD, individually,
Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-95-248-2)

Argued: September 24, 1996

Decided: September 11, 1997

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed in part, reversed in part, and vacated and remanded in part
by published opinion. Judge Ervin wrote the opinion, in which Judge
Hamilton and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Rebecca Ann Baitty, REBECCA A. BAITTY, P.A., Sara-
sota, Florida, for Appellants. John Christian Yoder, Harpers Ferry,

West Virginia, for Appellees. **ON BRIEF:** Rudolph A. DiTrapano, DITRAPANO & JACKSON, Charleston, West Virginia, for Appellant McGraw; Robert Cohen, COHEN, ABATE & COHEN, L.C., Fairmont, West Virginia, for Appellant Rodd. J. Thomas Burch, Jr., William T. Bennett, BURCH & ASSOCIATES, P.C., Washington, D.C., for Appellees.

_____

**OPINION**

ERVIN, Circuit Judge:

Defendants-Appellants Darrell V. McGraw, Jr. and Thomas Rodd appeal from an order denying their motions to dismiss under Fed. R. Civ. P. 12(b) on the particular ground that the order denied them the defense of absolute immunity to claims arising in part under 42 U.S.C. § 1983. They also inject into this appeal issues of qualified immunity and sovereign immunity. The appeal raises a number of jurisdictional difficulties. We ultimately determine that portions of the complaint against McGraw and Rodd must be dismissed for lack of jurisdiction. We also conclude that we possess appellate jurisdiction to hear the appeal to the extent it raises both absolute and sovereign immunity. We will not consider the qualified immunity defense in this posture. On the merits of the appeal, we reverse the district court on one count and affirm on the remainder of those counts over which federal court jurisdiction may be properly invoked.

I.

Plaintiff-Appellee Suarez Corporation Industries (SCI) is an Ohio corporation that markets its goods through direct-mail sweepstakes promotions and other contests. Plaintiffs-Appellees Emerson Clopper, Patricia Clopper, and Elizabeth Pishner are West Virginia residents who have purchased goods from SCI or participated in its promotions. Plaintiffs-Appellees are collectively referred to as SCI. McGraw is the Attorney General of West Virginia and Rodd is a Senior Assistant Attorney General.

In January 1994, McGraw filed a civil action against four direct marketing companies, alleging violations of the state's Consumer

2

Credit and Protection Act, W. Va. Code 46A-6-104 (1974). Rodd represented the State in the action. In August 1994, McGraw moved to join 102 additional defendants, including SCI, and applied for a preliminary injunction against all of the defendants in a single hearing. The state trial judge granted the motion to join but directed the State to proceed against only several of the defendants at the next hearing.

On September 2, 1994, SCI published a two-page ad in a local newspaper criticizing Attorney General McGraw for his prosecution of the lawsuit. That same day the Attorney General's office announced it would proceed against SCI alone at the next hearing. Ultimately, several of SCI's marketing schemes were temporarily enjoined by the state courts. See, e.g., State v. Imperial Mktg., 472 S.E.2d 792 (W. Va.), cert. denied sub nom. Suarez Corp. Indus. v. West Virginia, 117 S. Ct. 391 (1996).

On April 4, 1995, SCI instituted this action. McGraw and Rodd responded with a motion to dismiss under Rule 12(b), based in part on the ground of absolute immunity. While that motion was pending, SCI filed a First Amended Complaint (hereinafter FAC), and McGraw and Rodd responded with another motion to dismiss that did not refer specifically to a claim of absolute immunity but that did incorporate by reference the earlier motion to dismiss and its supporting memorandum.

The FAC contains nine counts. Counts I, II, III, and VI, the federal question claims, are brought pursuant to 42 U.S.C. § 1983. Count I seeks declaratory and injunctive relief from enforcement of the state court's preliminary injunction on the grounds of retaliation against First Amendment rights, while Count II seeks the same relief on the basis of a denial of equal protection. Count III seeks money damages from McGraw and Rodd, in their individual capacities, for First Amendment retaliation outside the scope of their duties. In Count VI, the individual plaintiffs seek injunctive relief from the state court's preliminary injunction at least to the extent it impedes their First Amendment rights to receive communications from SCI. The remaining claims are based on state law, including defamation (Count IV), intentional interference with contractual relations (Count V), a state constitutional right to receive communications (Count VII), interference with prospective contractual relations (Count VIII), and a prima

3

facie tort claim for damages (Count IX). The principal bases for these claims are that McGraw and Rodd accelerated enforcement proceedings against SCI after the newspaper ad; that McGraw faxed to all state attorneys general a warning that SCI's counsel threatened violence upon Rodd; that Rodd threatened the Canton, Ohio, Better Business Bureau (BBB) that the Attorney General would offer it no assistance in its expansion plan into West Virginia as long as SCI remained a member, leading ultimately to SCI's expulsion; that McGraw engaged in a running defamatory newspaper campaign against SCI, including calling SCI to one reporter a"gambling syndicate" that "prey[s] on the elderly and infirm"; and that McGraw and Rodd have disseminated derogatory information about other legal proceedings against SCI to the media and Dun & Bradstreet.

On November 16, 1995, the district court denied McGraw and Rodd's motions to dismiss in a very brief Memorandum Opinion and Order, see Suarez Corp. Indus. v. McGraw, No. CA-95-248-2 (S.D. W. Va. entered Nov. 16, 1995), stating, "After consideration of the submitted memoranda, the Court concludes it has subject matter jurisdiction and the Plaintiffs' First Amended Complaint states a claim upon which relief can be granted." See id. at 2. The district court's only explanation was provided in a footnote:

> Plaintiffs' First Amended Complaint is not a model pleading in several respects. For instance, the Court is unclear what injury the Plaintiff is alleging it has suffered under 42 U.S.C. § 1983 in Counts One and Two of the First Amended Complaint. However, a mere defect in the pleading does not warrant 12(b)(6) dismissal. See Gordon v. Leeke , 574 F.2d 1147, 1151 (4th Cir. 1978) ("pleadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated, and even if the claim is insufficient in substance, it may be amended to achieve justice."), cert. denied, 439 U.S. 970 (1978). The Court will revisit the issue at the dispositive motion stage if necessary.

Id. at 2 n.3.

The district court subsequently denied a motion to certify its November 16, 1995, order for interlocutory appeal pursuant to 28

4

U.S.C. § 1292(b). Its order is thus appealable, if at all, only if it falls within the collateral order doctrine. We granted a stay of discovery on January 26, 1996, while we determined the matter.

II.

Before proceeding to the merits of McGraw and Rodd's appeal, there are a number of jurisdictional issues with which we must contend.

A.

Ordinarily, appellate jurisdiction is lacking to hear an appeal from an order denying a Rule 12(b)(6) motion to dismiss since such an order is interlocutory in nature. Certain collateral orders are, however, considered "final decisions" within the meaning of 28 U.S.C. § 1291 and are therefore immediately appealable. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47 (1949). In Coopers & Lybrand v. Livesay, 437 U.S. 463 (1978), the Supreme Court stated that the "small class" of appealable collateral orders comprise those that "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment." Id. at 468.

In particular, certain denials of absolute and qualified immunity fall within this collateral order doctrine. Recently, we held that an order denying a Rule 12(b)(6) motion to dismiss based on qualified immunity is a final order over which we can exercise appellate jurisdiction. See Jenkins v. Medford, ___ F.3d #6D 6D6D#, 1997 WL 442679 (4th Cir. Aug.7, 1997) (en banc). See also Behrens v. Pelletier, 116 S. Ct. 834, 839 (1996). The same principles underlie the determination of whether the denial of either qualified or absolute immunity is an immediately appealable collateral order. Compare Nixon v. Fitzgerald, 457 U.S. 731, 740-43 (1982) (absolute immunity), with Mitchell v. Forsyth, 472 U.S. 511, 524-30 (1985) (qualified immunity). We accordingly hold now that we possess appellate jurisdiction to review an order denying a Rule 12(b)(6) motion to dismiss based on absolute immunity. The scope of our review is plenary, and, in this posture, we accept as true the facts as alleged in the complaint, view-

5

ing them in the light most favorable to the non-moving party. <u>See</u> <u>Jenkins</u>, ___ F.3d at ___, 1997 WL 442679, at *2.

B.

McGraw and Rodd also wish to place before us a claim of qualified immunity. They argue that, to the extent their absolute immunity claim may fail, SCI's claims against them are nevertheless barred by qualified immunity. If properly before us, our decision in <u>Jenkins</u> directly establishes our appellate jurisdiction. However, McGraw and Rodd raise their qualified immunity claim for the first time on this appeal. They claim they argued this "defense" in their Reply Memorandum in Support of Defendants' Motion to Dismiss, but a perusal of that memorandum does not substantiate their claim. It is nevertheless clear that the defense was not squarely before the district court, and, indeed, the notice of appeal to this court only specifically refers to the defense of absolute immunity. It is well-settled that a defense may not be first raised on appeal. <u>G. Heileman Brewing Co. v. Stroh</u> <u>Brewery Co.</u>, 843 F.2d 169, 172 (4th Cir. 1988) (citation omitted). In fact, we have refused to consider <u>sua sponte</u> a defense of qualified immunity in a § 1983 action when it was not properly preserved below, <u>Buffington v. Baltimore County, Md.</u>, 913 F.2d 113, 120-22 (4th Cir. 1990) (drawing a distinction between raising the issue of qualified immunity and raising the question of whether a constitutional violation occurred), <u>cert. denied</u>, 499 U.S. 906 (1991), and other circuits are in agreement, <u>see, e.g.</u>, <u>Caban-Wheeler v. Elsea</u>, 71 F.3d 837, 842 (11th Cir. 1996) (finding summarily that district court committed no error when defense of qualified immunity to § 1983 claim was not raised in the district court); <u>Berryman v. Regiler</u>, 47 F.3d 1167, 1995 WL 31575, at **4 (6th Cir. Jan. 26, 1995) (unpublished disposition) (refusing to consider defense of qualified immunity to § 1983 action not raised below and rejecting argument that review should be exercised because the issue presents a pure question of law). We therefore refuse to consider the merits of McGraw and Rodd's qualified immunity defense at this stage.

C.

McGraw and Rodd also interjected for the first time on appeal claims of sovereign immunity under the Eleventh Amendment.

6

Before we may reach the merits of those claims, we must again determine whether we possess appellate jurisdiction to do so.

We have recently held that, on an appeal from a grant of summary judgment, Eleventh Amendment immunity could be raised for the first time on that appeal. See In Re Creative Goldsmiths of Washington, D.C., Inc., No. 96-1895, slip op. at 5, ___ F.3d ___, ___ (4th Cir. July 22, 1997). The question here is whether it should be permitted on an appeal from the denial of a Rule 12(b)(6) motion. We conclude that it should be.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment, therefore, demands a "withdrawal of jurisdiction" that "effectively confers an immunity from suit" in federal court. Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993). Although we had previously noted that this "Eleventh [A]mendment immunity is a form of absolute immunity," Coakley v. Welch, 877 F.2d 304, 305 (4th Cir.), cert. denied, 493 U.S. 976 (1989), the qualifying proviso that it is "expressed as a limit on the jurisdiction of the federal courts," id., makes this form of absolute immunity an entirely different animal than the species McGraw and Rodd raised below and in their notice of appeal. Eleventh Amendment immunity is properly classified an "immunity" only to the extent that it operates as a bar to suit in a federal forum; whenever it is properly invoked by a state or its agents, however, that bar is absolute. The defenses of absolute and qualified immunity, conversely, are personal immunities that may be invoked independent of the forum.

In Coakley, we found we possessed appellate jurisdiction over an appeal from a denial of a Rule 12(b)(6) motion to dismiss predicated on Eleventh Amendment immunity, for there there was "no serious contention that the order denying immunity in this case does not fulfill the Cohen criteria," id., a position later supported by the Supreme Court in Puerto Rico Aqueduct. Unlike in the instant case, in Coakley the issue of Eleventh Amendment immunity was squarely before the district court, and there could be no claim that the "defense" was

7

raised for the first time on appeal. The posture was similar in Puerto Rico Aqueduct. There the Aqueduct and Sewer Authority moved to dismiss on the ground that it was an "arm of the State," and thus immune from suit in federal court under the Eleventh Amendment. Puerto Rico Aqueduct, 506 U.S. at 141. The district court denied the motion, and the First Circuit determined it lacked appellate jurisdiction over the interlocutory appeal. Id. at 142. The Supreme Court reversed, holding that the collateral order doctrine applied in these circumstances with "its ultimate justification[being] the importance of ensuring that the States' dignitary interests can be fully vindicated." Id. at 146.

In Creative Goldsmiths, however, the defense was raised for the first time on an appeal from summary judgment. There we concluded that the defense's jurisdictional characteristics did permit it to be raised on appeal. See Creative Goldsmiths, slip op. at 5, ___ F.3d at ___. See also Edelman v. Jordan, 415 U.S. 651, 677-78 (1974) (holding that the "Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar . . . that it need not be raised in the trial court"); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 467 (1945) ("The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue .. . even though urged for the first time in this Court."). We believe that, because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even sua sponte. We therefore conclude that, although McGraw and Rodd did not properly present their Eleventh Amendment claim to the district court in their motion to dismiss, we nevertheless possess appellate jurisdiction to determine the matter.

D.

Although not raised by the parties, we see additional jurisdictional hurdles. Counts I, II, VI, and VII of the FAC seek, in part, injunctive relief from the enforcement of the state court preliminary injunction. That injunction was originally set to expire 180 days after the entry of the mandate by the West Virginia Supreme Court of Appeals on March 20, 1996. See Imperial Mktg., 472 S.E.2d at 810. The parties, however, agreed that the preliminary injunction would continue for

8

180 days after the United States Supreme Court denied certiorari on November 4, 1996. See Suarez Corp. Indus. v. West Virginia, 117 S. Ct. 391 (1996). While this appeal has been pending, those 180 days have passed. Indeed, just prior to the expiration of the preliminary injunction, the state circuit court modified it into a permanent injunction. See State v. Imperial Mktg., No. 94-C-243, slip op. at 14 (Kanawha County, W. Va., Cir. Ct. entered Apr. 25, 1997).

A federal court may adjudicate a claim only if "an actual controversy [is] extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 137 L.Ed.2d 170, 193 (1997) (internal quotation marks and citations omitted). Federal courts should determine whether a live case or controversy continues to exist at the outset since mootness goes to the heart of the Article III jurisdiction of the courts. See id. To the extent Counts I, II, VI, and VII seek relief from the preliminary injunction, they are now moot. We accordingly lack jurisdiction to hear SCI's appeal on those counts. Rather than merely dismiss the appeal as to that aspect of those counts, we instead vacate the order below and remand with instructions to dismiss the FAC to that extent. See id. at 196 (stating that "[w]hen a civil case becomes moot pending appellate adjudication, the established practice . . . is to .. . vacate the judgment below and remand with a direction to dismiss""when mootness occurs through happenstance" (internal quotation marks and citations omitted)).

Counts I, II, and VI, each a federal constitutional claim predicated on 42 U.S.C. § 1983, and Count VII, a state constitutional claim, also seek variously a declaration that the prosecution of SCI is unwarranted as well as injunctive relief against future enforcement actions against SCI, including proceedings to seek a permanent injunction against SCI. That state court permanent injunction has now issued. The Rooker-Feldman doctrine, however, makes it clear that federal courts do not possess jurisdiction to hear constitutional claims adjudicated by state courts or claims that are inextricably intertwined with the merits of a state court judgment. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Ct. App. v. Feldman, 460 U.S. 462 (1983). See also Jordahl v. Democratic Party of Va., No. 96-2402, slip op. at 11-18, ___ F.3d ___, ___ (4th Cir. July 28, 1997); Guess v. Board of Med. Examiners, 967 F.2d 998, 1002-05 (4th Cir.

9

1992). Lower federal courts cannot sit in direct review of final state court decisions. See Feldman, 460 U.S. at 483 n.16; Jordahl, slip op. at 11, ___ F.3d at ___. A plaintiff cannot seek, in federal court, review of, or relief from, a state action or proceeding that is essentially judicial in nature. There is no question that the preliminary injunction, now moot, as modified into a permanent injunction, is a state court decision arising from a judicial proceeding. To the extent SCI's FAC seeks review of, or relief from, such state judicial decisions, neither we nor the district court possess jurisdiction to hear the claims. We therefore vacate the order below and remand with instructions to dismiss the FAC to the extent the Rooker-Feldman doctrine is implicated.

III.

We now turn to the merits of McGraw and Rodd's appeal on those counts over which we appear to possess jurisdiction, beginning first with their assertion of Eleventh Amendment immunity.

A.

Examining the FAC under the lens of the Eleventh Amendment, we find we must reverse the denial of the motion to dismiss with regard to whatever remains of Count VII, a claim seeking injunctive relief for a state official's violation of state law. Such a claim is barred by the Eleventh Amendment under Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106, 121 (1984), a point SCI conceded at oral argument, and therefore the district court lacked subject matter jurisdiction to hear the claim.

McGraw and Rodd urge that all of the state law claims are similarly barred. The remaining counts (Counts IV, V, VIII, and IX), however, seek monetary relief. Although the FAC is silent as to the capacity in which McGraw and Rodd are being sued in these counts, we take SCI's request for compensatory and punitive damages as an indication that these state actors are being sued in their personal capacities here, since such relief is unavailable in official capacity suits. See Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). This conclusion is supported by the fact that SCI did not allege that McGraw and Rodd were acting in accordance with a governmental policy or

10

custom. See id. Indeed, Count IV explicitly alleges that McGraw was acting outside the scope of his duties as Attorney General. See J.A. at 314. The relevant factors thus demonstrate that SCI intended to sue McGraw and Rodd in these counts in their personal capacities. Because the Eleventh Amendment does not bar suits against governmental officials sued in their personal capacities, see Hafer v. Melo, 502 U.S. 21, 30-31 (1991), McGraw and Rodd may not seek to interpose sovereign immunity to these claims.

There is also no prima facie Eleventh Amendment bar to the four federal claims. Two claims (Counts I and II) seek declaratory and injunctive relief, and a third (Count VI) seeks injunctive relief; the long-standing rule of Ex parte Young, 209 U.S. 123 (1908), permits these claims. See also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989); Gray v. Laws, 51 F.3d 426, 430 n.1 (4th Cir. 1995). As noted above, we leave it to the district court to determine what remains of these three counts after application of the Rooker-Feldman doctrine. Count III, which seeks money damages against McGraw and Rodd in their personal capacities, like the state law counts discussed above, but in this instance pursuant to an alleged violation of 42 U.S.C. § 1983, is likewise not barred. As a general rule, damages against state officers in their individual capacities are permissible. See Scheuer v. Rhodes, 416 U.S. 232, 238 (1974) (citations omitted); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). The four remaining state law claims may coattail in under the supplemental jurisdiction statute, 28 U.S.C. § 1367.

B.

Finding subject matter jurisdiction over what remains of the eight remaining claims,**1** we finally address the issue of the adequacy of the complaint. We have previously held that defendants face a "procedural stumbling block" in asserting affirmative defenses in a Rule 12(b)(6) motion. Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993). Because such a motion is intended to test the legal adequacy of the complaint, not to address the

_____

**1** To be clear, there is no federal court jurisdiction over Count VII. There is also no federal court jurisdiction over those parts of Counts I, II, and VI that are barred by the Rooker-Feldman doctrine.

11

merits of any affirmative defenses, we permit a defense to be raised under Rule 12(b)(6) "only if it <u>clearly</u> appears on the face of the complaint." <u>Id.</u> (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 348-49 (2d ed. 1990) ("The complaint also is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense, but the defense clearly must appear on the face of the pleading." (footnotes omitted))) (citation omitted) (emphasis added). In <u>Forst</u>, we found that neither the defense of collateral estoppel nor the defense of res judicata appeared on the face of the complaint and thus refused to consider them in that case's current posture, stating that they were "more properly reserved for consideration on a motion for summary judgment." <u>Id.</u>

McGraw and Rodd argue that, to the extent the FAC seeks relief for their pursuit of the state court action, the claims are barred by absolute immunity. While traditional prosecutorial activities are accorded absolute immunity, <u>see Imbler v. Pachtman</u>, 424 U.S. 409, 431 n.33 (1976), the scope of absolute prosecutorial immunity has been narrowly drawn. <u>See Buckley v. Fitzsimmons</u>, 509 U.S. 259, 277-78 (1993) (holding unanimously that a prosecutor's statements to the media are not protected by absolute immunity); <u>Burns v. Reed</u>, 500 U.S. 478, 492-96 (1991) (explaining that, historically, there is no absolute immunity for prosecutors advising law enforcement officers). Moreover, in each of the remaining counts of the instant case, SCI alleges injuries from McGraw and Rodd, either directly or by incorporation, from their "communications with the state attorneys general, BBB, the media and the credit reporting companies." J.A. at 305; <u>see also id.</u> at 311, 313, 322. Thus, looking only to the face of the complaint, <u>Forst</u>, 4 F.3d at 250, SCI's own allegations do not show that the defense of absolute immunity will vitiate <u>entirely</u> its ability to recover on any of these eight counts, since each alleges communications to the media, controlled by <u>Buckley</u>, and other attorneys general, controlled by <u>Burns</u>. Furthermore, given the Supreme Court's reticence in recognizing absolute immunity in § 1983 actions, <u>see, e.g.</u>, <u>Buckley</u>, 509 U.S. at 269; <u>Forrester v. White</u>, 484 U.S. 219, 224 (1988), as well as our own recent holding that an official "who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity under

12

§ 1983," In re Allen, 106 F.3d 582, 593 (4th Cir. 1997),**2** McGraw and Rodd face considerable difficulty in establishing a claim to absolute immunity where the FAC explicitly alleges the ultra vires nature of their acts. Finally, the FAC, read as a whole, alleges its claims with "sufficient precision" to clearly advise McGraw and Rodd of the nature of the claims, thereby satisfying our heightened pleading standard for actions against government officials for money damages. Dunbar Corp. v. Lindsey, 905 F.2d 754, 763-64 (4th Cir. 1990). We therefore conclude that those portions of the FAC over which federal court subject matter jurisdiction may be exercised sufficiently state claims upon which relief can be granted to withstand McGraw and Rodd's Rule 12(b)(6) motion to dismiss.

## IV.

We agree with the district court's observation that the FAC is not a model pleading. This court, however, is a court of limited jurisdiction. Where issues have not been properly presented below, permitting the district court to do its job, we refuse, beyond what our jurisdictional mandate requires, to parse through every element in a nine-count complaint upon the denial of a Rule 12(b)(6) motion and tell the parties where we think viable claims and defenses thereto may lie. Such a piecemeal approach would hazard us stepping beyond our proper jurisdictional bounds and stepping on the toes of the district court.

Here we do decide that we possess appellate jurisdiction to consider whether a complaint on its face may be vitiated by an Eleventh Amendment claim to immunity from suit in federal court. In this case, Count VII of the FAC is barred on its face under the Eleventh Amendment, and the district court's order must therefore be reversed with respect to that one count. The other eight counts are not so barred. We express no opinion as to whether, upon further proceedings and factual development, this same conclusion would hold.

_____

**2** We, of course, recognize that McGraw was the defendant in Allen whom we denied qualified immunity for acts clearly established to be beyond the scope of his authority. That recognition, however, in no way unduly influences our decision in the instant case.

13

We also conclude that those parts of the controversy seeking relief from a state court preliminary injunction have become moot and that Article III jurisdiction is accordingly lacking. In addition, we determine that both we and the district court lack jurisdiction to hear SCI's claims to the extent it seeks review of, or relief from, any continuing state court judicial proceedings or decisions. We therefore vacate the order below and remand with instructions to the district court to dismiss the FAC to the extent that claims are moot or the Rooker-Feldman doctrine is implicated.

We further decide that we do possess appellate jurisdiction to consider McGraw and Rodd's claim of absolute immunity. On that claim, we conclude that SCI's allegations do not show that the defense of absolute immunity will vitiate completely its ability to recover on any of the counts over which federal court subject matter jurisdiction is properly invoked. We accordingly affirm the district court's order to that extent.

We will not consider McGraw and Rodd's claim of qualified immunity at this stage of the litigation.

IT IS SO ORDERED.

14