WILKINSON, Chief Judge,
dissenting:
I respectfully dissent from the decision to remand this case. The parties have thoroughly briefed and argued the Eleventh Amendment question. It is ripe for resolution. The Governor of Virginia simply is not a proper party to this suit. There is no indication that the Governor actively enforced the challenged traffic statute or that he intends to do so in the future. Furthermore, the Governor’s general duty to enforce the laws of Virginia does not satisfy Ex parte Young’s requirement that the Governor bear a “special relation” to the statute under challenge. Any other result would routinely subject a Governor to suits challenging the validity of the most minor of state laws and regulations. I would dismiss the Governor as a defendant in this action.
I.
As an initial matter, I disagree with my good colleagues that a remand in this case is appropriate. It is proper to consider here the Eleventh Amendment question even though Virginia did not raise it in the district court prior to filing this appeal. See Edelman v. Jordan, 415 U.S. 651, 677-78, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (holding that a defendant may raise an Eleventh Amendment argument in the court of appeals, even after failing to do so in the lower court); Suarez Corp. Industries v. McGraw, 125 F.3d 222, 227 (4th Cir.1997) (“We believe that, because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even sua sponte.”).
Remand serves no useful purpose in this case. Both parties have ably briefed and argued this issue. Indeed, the district court has stated that it is waiting for this court to decide it. This court fully understands the Eleventh Amendment issue and its application to the facts here. As a result, we have an obligation to render a decision.
Furthermore, the parties deserve better than to have a preliminary issue remanded by this court. We ought not to lose sight of the fact that this is an interlocutory appeal. See 28 U.S.C. § 1292(a)(1). Remand on a preliminary matter will only delay the parties in reaching the merits of their case. By contrast, even if the Governor is removed from this case, the plaintiffs may name a more suitable state official as defendant and proceed with their suit.*
*412 II.
Turning to the Eleventh Amendment question, it is clear that the Governor is not a proper party to this action.
A.
Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), permits citizens to sue state officials to enjoin the enforcement of unconstitutional laws. This rule is an exception to the general constitutional command that federal courts do not have jurisdiction over suits by citizens against the states. The Young exception is limited, however, by its requirement that named state officials bear a special relation to the challenged statute. Young recognized that the fundamental purpose of the Eleventh Amendment would be thwarted if parties could name any state official in an action. The Court stated that “it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.” Young, 209 U.S. at 157, 28 S.Ct. 441.
Young’s “special relation” requirement prevents parties from circumventing the dictates of the Eleventh Amendment. Young demands precision in naming parties because otherwise:
the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the State, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the State in litigation involving the enforcement of its statutes.
Young, 209 U.S. at 157, 28 S.Ct. 441 (quoting Fitts v. McGhee, 172 U.S. 516, 530, 19 S.Ct. 269, 43 L.Ed. 535 (1899)). The Supreme Court recognized that such a strategy might be a convenient way to obtain a speedy determination of constitutional questions. However, that strategy “cannot be applied to the States of the Union consistently with thé fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.” Id. at 157, 28 S.Ct. 441 (quoting Fitts, 172 U.S. at 530, 19 S.Ct. 269).
Young went on to note that general grants of authority may sometimes create a “special relation” between a state official and the challenged statute. The Court held: “The fact that the state officer by virtue of his office has some connection with the enforcement of the act is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.” Young, 209 U.S. at 157, 28 S.Ct. 441. Young failed to explain, however, what type of “general laws” create a sufficient connection. It is upon this question that the current appeal now turns.
B.
The question of whether the Governor of Virginia has any “special relation” to Virginia Code § 46.2-930 is determined by analyzing state law. See Young, 209 U.S. at 157, 28 S.Ct. 441. The text of § 46.2-930 reads in full:
Loitering on Bridges. Pedestrians shall not loiter on any bridge on which the *413 Commonwealth Transportation Commissioner has posted signs prohibiting such action. Any person violating the provisions of this section shall be guilty of a traffic infraction.
The text makes no mention of the Governor. Rather, the only state official mentioned by § 46.2-930 is the Commonwealth’s Transportation Commissioner, who has authority to post signs prohibiting loitering. Furthermore, Virginia law delegates the enforcement of the challenged statute to local police officers. See Va. Code § 46.2-937.
The plaintiffs argue, however, that Governor Gilmore is sufficiently connected to § 46.2-930 by virtue of his general duties as Governor. They contend that Young’s special relation requirement applies solely to state officials, such as the Secretary of Education, who have “no duty at all with regard to the act.” Young, 209 U.S. at 168, 28 S.Ct. 441 (emphasis added). By contrast, the plaintiffs argue that Governor Gilmore’s duty to “take care that the laws be faithfully executed” sufficiently connects him to § 46.2-930. See Va. Const, art. V, § 7. The Governor also has authority to request that the Attorney General prosecute § 46.2-930, or to summon law enforcement agencies to enforce the Act if such enforcement is necessary to preserve the peace and safety of the Commonwealth. See Va.Code §§ 2.1-124; 18.2-410.
I do not think that the Governor’s general authority to enforce the laws of the Commonwealth is sufficient to satisfy Young’s special relation requirement. “General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law.” Children’s Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412, 1416 (6th Cir.1996) (citing 1st Westco Corp. v. School Dist. of Philadelphia, 6 F.3d 108, 113 (3d Cir.1993)); see also Snoeck v. Brussa, 153 F.3d 984, 986 (9th Cir.1998) (“[A] generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit”) (citing Los Angeles County Bar Ass’n v. Eu, 979 F.2d 697, 704 (9th Cir.1992)); Mendez v. Heller, 530 F.2d 457, 460 (2d Cir.1976) (attorney general’s duties to support the constitutionality of challenged state statutes and to defend actions in which the state is interested do not make him a proper defendant); Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir.1979) (general duty of governor “to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute”). To hold otherwise would extend Young beyond what the Supreme Court has intended and held. See Children’s Healthcare, 92 F.3d at 1416; see also Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).
Rather, it is only appropriate to allow a state official to be named in a suit based on his general duties where there is a “real, not ephemeral, likelihood or realistic potential that the connection will be employed against the plaintiffs interests.” 1st Westco, 6 F.3d at 114 (internal citation omitted); see also Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir.1992) (per cu-riam) (holding that state attorney general was not proper party where there was no real likelihood that he would enforce his supervisory powers against the plaintiffs’ interest); Sherman v. Community Consol. School Dist. 21, 980 F.2d 437, 440-41 (7th Cir.1992) (holding that state attorney general was not proper party where he never threatened the plaintiffs with prosecution and apparently had no authority to do so). This requirement is consistent with Young, where the Minnesota Attorney General had already commenced proceedings to enforce the challenged statute. Young, 209 U.S. at 160, 28 S.Ct. 441.
Here, the Governor bears no real connection to the enforcement of § 46.2-930. There is no allegation that the Governor ordered its enforcement against the plain *414 tiffs. Insofar as this record shows, the Governor has never ordered its enforcement against anyone. Nor is there a real likelihood that the Governor will ever use the power of his office to enforce a mere traffic infraction, a violation of which is punishable by a fine and costs totaling forty-three dollars. Furthermore, since traffic infractions are “not deemed to be criminal in nature” under Virginia law, see Va.Code § 18.2-8, it is doubtful whether the Governor’s separate power to request criminal prosecution by the Attorney General is even implicated in this case. See Va.Code § 2.1-124.
Removing the Governor as defendant will not have the effect of pushing the plaintiffs out of court. The plaintiffs can still seek relief by naming as defendant the Commonwealth’s Transportation Commissioner. As the text of § 46.2-930 explicitly indicates, the Commissioner plays a crucial role in the statutory scheme. It is only by his designation that a bridge may receive a “No Loitering” designation under the Act. Without this designation, no state official can enforce § 46.2-930. Likewise, the Commissioner possesses the authority to cover the signs if the court orders him to do so, thus rendering § 46.2-930 unenforceable. By contrast, the Governor has no special relation to this law, nor is there any indication that the Governor himself intends to enforce the law in the future.
C.
If the Governor is forced to remain a party to this suit, then the Governor also may be named in lawsuits challenging the validity of' any state law. Such an approach would be problematic in several ways. First, such a practice would be inconsistent with the approach governing suits which challenge federal laws. Such suits are not routinely brought against the President simply by virtue of his constitutional duty to enforce the laws. Rather, other federal officials who bear a discerna-ble relationship to the challenged statute are typically named. See, e.g., Reno v. American Civil Liberties Union, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (Attorney General named as a defendant in a suit challenging the constitutionality of federal statute criminalizing the knowing transmission of indecent materials to minors); National Endowment for the Arts v. Finley, 524 U.S. 569, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (Chairperson of the NEA named as a defendant in a suit challenging the constitutionality of federal statute requiring NEA to ensure that grants are awarded based upon artistic excellence and artistic merit); Eastern Enterprises v. Apfel, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) (Commissioner of Social Security named as a defendant in a suit challenging the constitutionality of federal statute requiring coal company to pay premiums for beneficiaries assigned by Commissioner). Moreover, when cases challenge the validity of federal regulations, the defendant is generally the Secretary of the department that issued them. See, e.g., Regions Hosp. v. Shalala, 522 U.S. 448, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998); Public Lands Council v. Babbitt, 529 U.S. 728, 120 S.Ct. 1815, 146 L.Ed.2d 753 (2000). The President’s general duty to ensure that the laws of the land are faithfully executed does not mean that the President is a defendant in every suit testing the validity of a federal enactment.
Next, permitting a party to name the Governor in any suit challenging the validity of state law would allow the rule in Ex parte Young to swallow the protections offered by the Eleventh Amendment. Plaintiffs could routinely name the Governor as a defendant in an effort to obtain a judgment binding on the State. Plaintiffs approach would also regularly subject the Governor to the risk of contempt. The President of the United States may not be enjoined in the performance of his official duties. See State of Mississippi v. Johnson, 71 U.S. (4 Wall.) 475, 501, 18 L.Ed. 437 (1866). This rule is founded partly upon an unwillingness to subject the head *415 of the Executive branch to the possibility of being cited for contempt. Unlike his Cabinet officers and other subordinate officials, the Governor is the embodiment of the Executive power in Virginia. Subjecting governors gratuitously to the threat of citations for contempt is an unwarranted federal interference with the administration of state government.
At the very least, this court should leave it to the states to choose which officials they would subject to binding federal decrees. The federal courts should not lightly interfere with state decisions on the very organization of state governments. It is difficult to imagine a more fundamental intrusion on state sovereignty. The Supreme Court drew this line as far back as 1911 in Coyle v. Smith, 221 U.S. 559, 565, 31 S.Ct. 688, 55 L.Ed. 853 (1911), where it forbade the federal government from ordering the State of Oklahoma to locate its capital in a certain city. See also Gregory v. Ashcroft, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (holding that the states’ right to structure their internal governmental operations and to create restrictions on the exercise of government authority is “a decision of the most fundamental sort for a sovereign entity”). Plaintiffs ask us to interpret Virginia law to bestow upon the Governor an obligation to enforce a mere traffic statute. However, Virginia’s officials have designed state operations so that the Governor is not charged with the enforcement of § 46.2-930. The Virginia legislature determined that the Transportation Commissioner and the local police would assume this duty. Likewise, the Governor has not assumed that duty by attempting to enforce this statute. Implicit in the legislature’s and the Governor’s choice is a desire not to subject the Governor of the Commonwealth to the onus of judicial process in suits seeking to enjoin enforcement of § 46.2-930. Holding that the Governor bears a special connection to this statute simply neglects Virginia’s decisions in this area.
III.
The purpose of the “special relation” requirement is not to erect barriers for parties seeking to enforce their constitutional rights under Ex parte Young. Rather, the requirement merely seeks to enforce a modicum of precision in determining which state officials are named. In this case, officials other than'the Governor bear the duty of enforcing § 46.2-930. To allow the Governor to remain a named party in this case would eviscerate the limits Young established and reorder settled Eleventh Amendment law.
I would dismiss the Governor as a defendant in this case.

 The majority suggests that any opinion on the Governor’s status might somehow be advisory. See supra, n. 5. Not so. This appeal *412 squarely presents a jurisdictional issue, which is not going to disappear upon remand.
Plaintiffs bear the burden of alleging facts which, if proven, would establish that the Governor actually belongs in the suit. This plaintiffs have failed to do. Plaintiffs have not even requested a remand for findings of jurisdictional facts, nor have they suggested that the Governor bears anything other than the general legal connection of any chief executive to the challenged enactment. Remanding this case serves only to encourage future plaintiffs to denominate Governors routinely as party defendants in the hope that a "special relation” may one day appear. This is not what I understand the rule of Ex parte Young to be about.